```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**v.**                       **Civil Action No. 1:20CR40**
                                        **(Judge Keeley)**

**DANIEL PORTER CRITCHFIELD,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

The charge of unlawful possession of a firearm in this case stems from an investigatory stop of the defendant, Daniel Critchfield ("Critchfield"), on Airport Road in Bridgeport, West Virginia. On the morning of January 25, 2016, Charles Gerhart ("Gerhart"), a federal postal inspector, encountered Critchfield in his neighborhood. Gerhart's sixteen years of law enforcement experience, in combination with Critchfield's location, behavior, and appearance, led him to be suspicious of Critchfield. He then called Bridgeport Police Department Deputy Chief Randy Hartley ("Hartley") on his cell phone to report Critchfield's behavior and location.

Hartley and Lieutenant Michael Lemley ("Lemley") responded to Gerhart's call and located Critchfield walking alone on Airport Road. Hartley and Lemley approached Critchfield from behind in an

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

unmarked police cruiser. After gaining Critchfield's attention, Hartley gestured that he should move to the side of the road. Although Critchfield complied, he kept his back to the officers and appeared to be working his hands inside of his sweatshirt. In response to this, Hartley activated the cruiser's rear emergency lights and pulled it to a stop on the shoulder of Airport Road. As Lemley exited the cruiser, he observed Critchfield remove a firearm from his sweatshirt. On Lemley's command, Critchfield dropped the firearm. The officers then handcuffed and searched Critchfield, which led to the discovery of two flashlights, a pair of gloves, and various controlled substances.

Pending is Critchfield's motion to suppress the firearm and other physical evidence, all of which he claims were obtained in violation of his Fourth Amendment rights. Also pending are the Government's and Critchfield's objections to the Report and Recommendation ("R&R") entered by the Honorable Michael J. Aloi, United States Magistrate Judge, recommending that Critchfield's motion to suppress be denied. For the following reasons, the Court **ADOPTS** the R&R (Dkt. No. 36), **OVERRULES** Critchfield's objection (Dkt. No. 37), **OVERRULES** the Government's objection (Dkt. No. 38), and **DENIES** Critchfield's motion to suppress physical evidence (Dkt. No. 20).

**USA v. CRITCHFIELD**                                                        **1:20CR40**

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

## I. BACKGROUND

### A. Procedural History

On September 1, 2020, a grand jury sitting in the Northern District of West Virginia returned a one-count indictment, which charged Critchfield with Unlawful Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Dkt. No. 4). After Critchfield moved to suppress all evidence obtained as a result of his seizure, including the firearm, the Court referred the motion to Magistrate Judge Aloi for initial review (Dkt. Nos. 20, 21). At an evidentiary hearing held on January 13, 2021, Magistrate Judge Aloi heard the testimony of Gerhart and Lemley (Dkt. No. 31).

### B. Report and Recommendation

In his R&R, Magistrate Judge Aloi concluded that Hartley and Lemley had detained Critchfield when, upon Hartley's gesturing for him to move to the side of Airport Road, Critchfield complied (Dkt. No. 36 at 2). Magistrate Judge Aloi characterized the central question in this case as whether, based upon the information they had received from Gerhart, Hartley and Lemley had a reasonable suspicion to seize Critchfield at that time. Id. at 14.

Magistrate Judge Aloi noted that, although the motion raised difficult questions of fact, ultimately, "the number of factors which Gerhart was able to observe and articulate as to

3

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

[Critchfield's] behavior, appearance, location, and movement – combined with Gerhart's law enforcement training and experience" gave rise to a reasonable suspicion justifying Critchfield's detention. Id. at 18. Magistrate Judge Aloi therefore recommended that the Court deny Critchfield's motion to suppress. Id.

### C. Critchfield's Objection

Critchfield agrees that the officers detained him at the moment Hartley commanded him to move to the side of the road, but he objects to Magistrate Judge Aloi's conclusion that Hartley and Lemley had a reasonable suspicion justifying his seizure at that time (Dkt. No. 37 at 5, n.5). Critchfield contends that Magistrate Judge Aloi impermissibly aggregated facts known by Gerhart but not communicated to Hartley or Lemley to find that a reasonable suspicion existed to justify his seizure, and argues that the facts actually communicated by Gerhart did not rise to a reasonable suspicion. Id. at 6.

### D. Government's Objection

The Government agrees with Magistrate Judge Aloi's conclusion that Hartley and Lemley had a reasonable suspicion to detain Critchfield, but objects to his finding that the officers detained Critchfield when Hartley motioned for him to move to the side of the road (Dkt. No. 38 at 1, 3-5). It asserts that Hartley and

Case 1:20-cr-00040-IMK-MJA   Document 41   Filed 04/28/21   Page 5 of 17 PageID #: 308

**USA v. CRITCHFIELD**                                                   **1:20CR40**

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

Lemley actually detained Critchfield only after they observed him draw a firearm from his sweatshirt and exited their cruiser with firearms drawn. Id. at 5.

## II.  STANDARD OF REVIEW

When considering a magistrate judge's R&R pursuant to 28 U.S.C. § 636(b)(1), the Court must review de novo those portions to which an objection is timely made. Otherwise, the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the defendant does not object. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Courts will uphold portions of a recommendation to which no objection has been made unless they are "clearly erroneous." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

## III. APPLICABLE LAW

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. Generally, a seizure occurs if a reasonable person would not feel free to leave. United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002). This includes brief investigatory stops. Terry v. Ohio, 392 U.S. 1 (1968). However, an investigatory stop is permissible if, at the time of the seizure, the police officer has a reasonable suspicion that criminal activity is afoot. Id. at 30. A reasonable suspicion requires some

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

minimal level of objective justification for making a stop. United States v. Sokolow, 490 U.S. 1, 7 (1989).

"In making reasonable-suspicion determinations, reviewing courts must look at the 'totality of the circumstances' for each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). A search or seizure without a reasonable suspicion triggers the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." Herring v. United States, 555 U.S. 135, 139 (2009).

### IV.   DISCUSSION

After conducting a de novo review of the portions of the R&R to which Critchfield and the Government have objected, and following a review for clear error of the remaining portions to which no objection was filed, the Court concludes that, based on the totality of the circumstances, (1) Critchfield was detained when he complied with Hartley's directive to move to the side of Airport Road, and (2) Hartley and Lemley had a reasonable suspicion to justify Critchfield's seizure based upon the information conveyed to them by Gerhart.

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

**A. Critchfield was detained when he complied with Hartley's directive to move to the side of the road.**

"A seizure occurs when officers employ physical force or a show of authority that in some way restrains the liberty of the person." United States v. Cloud, 2021 WL 1342917, at *4 (4th Cir. Apr. 12, 2021) (quoting Torres v. Madrid, 141 S. Ct. 989, 995 (2021) (cleaned up). Where physical force is absent, a seizure requires (1) a law enforcement officer's show of authority, and (2) a defendant's submission to that authority. Id., at *5. "A show of authority occurs if the totality of the circumstances demonstrates that a reasonable person, measured objectively from an innocent citizen's perspective, would have believed that he was not free to leave." Id. at *4 (quoting United States v. Mendenhall, 446 U.S. 544 (1980)).

A show of authority alone, however, does not implicate the Fourth Amendment; rather, the defendant must also actually submit to the officer's show of authority. Id. at *5 (citing California v. Hodari D., 499 U.S. 621, 628–29 (1991)). Determining when a defendant acquiesces to a show of authority "can be a difficult, fact-intensive inquiry," for "what may amount to submission depends on what a person was doing before the show of authority." United States v. Stover, 808 F.3d 991, 996 (4th Cir. 2015).

Case 1:20-cr-00040-IMK-MJA   Document 41   Filed 04/28/21   Page 8 of 17   PageID #: 311

**USA v. CRITCHFIELD**                                                                 **1:20CR40**

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

Submission may take the form of "passive acquiescence." Id. (citing Hodari D., at 628–29).

Courts determining whether a reasonable person would have believed he was free to leave consider several factors. The Fourth Circuit, for example, has instructed district courts to consider (1) how many officers were present, (2) whether officers were in uniform and/or displayed firearms, (3) whether any officer touched the defendant or made any attempt to block or restrain his movement, (4) if the officer's questioning was conversational rather than intimidating, (5) whether the officer informed the defendant that he suspected him of illegal activity, or treated the encounter as routine, and (6) if the officer asked for identification, how quickly the officer returned it to the defendant. United States v. Black, 707 F.3d 531, 537–38 (4th Cir. 2013). An officer's activation of a siren or flashers, commanding a person to halt, or operating a cruiser in an aggressive manner to block a person's course also indicate that a seizure has occurred. Michigan v. Chesternut, 486 U.S. 567, 575–76 (1988).

Here, the Court must determine at what point a reasonable person in Critchfield's position would have believed he was not free to leave. Because neither Hartley nor Lemley used physical force to detain him, Critchfield must have submitted to an

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],**
**OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],**
**OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND**
**DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

officer's show of authority for a seizure to have occurred. Clearly, when Hartley and Lemley exited the cruiser with their firearms drawn, a reasonable person in Critchfield's position would have known he was not free to leave. Moreover, at that time, the officers had a reasonable suspicion to detain Critchfield since Lemley had observed Critchfield remove a firearm from his front sweatshirt pocket while attempting to conceal his actions from the officers.

Nevertheless, the question remains whether, as Magistrate Judge Aloi found, Critchfield was detained prior to the moment when the officers drew their firearms. Based on the totality of the circumstances, the following facts establish that Critchfield was seized at the moment he complied with Hartley's directive to move to the side of Airport Road.

First, Critchfield was walking alone on Airport Road when Hartley and Lemley approached him from behind. Critchfield looked over his shoulder as the cruiser neared. Although the cruiser was an unmarked law enforcement vehicle, it is undisputed that, based on the appearance of the cruiser and its passengers, Critchfield understood he was being approached by law enforcement officers. Hartley and Lemley were in uniform and the cruiser had a front

Case 1:20-cr-00040-IMK-MJA   Document 41   Filed 04/28/21   Page 10 of 17   PageID #: 313

USA v. CRITCHFIELD                                                  1:20CR40

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

spotlight, emergency lights in the front grill, and several antennas.[1]

Next, after gaining Critchfield's attention, Hartley gestured to him from inside the cruiser to move to the right shoulder, and Critchfield responded by immediately moving off Airport Road. Hartley then activated the cruiser's rear emergency lights and pulled the cruiser off the road behind him. Although Critchfield continued to move to the right, he kept his back to the officers in an attempt to conceal the front of his body and place his hands inside his sweatshirt pocket without detection.

The Government has pointed out that consideration of the Black factors alone may not support the conclusion that Critchfield was seized at the moment he complied with Hartley's gesture. Critchfield was approached by an unmarked vehicle and the officers had not yet requested information or displayed their firearms. As the two officers had not yet spoken to Critchfield, there was no tone used that was threating or intimidating. Nor had they informed him that he was suspected of any criminal activity.

This Court must consider not only the Black factors but also the totality of the circumstances. Here, two uniformed officers

---

[1] The cruiser may have also had a front license plate identifying it as a city vehicle.

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

approached Critchfield in what appeared to be a law enforcement vehicle. One of the officers motioned for him to alter his course. Although Hartley did not use the cruiser to block Critchfield's path, he did drive close enough behind Critchfield to be able to signal to him, drive the cruiser to the right shoulder behind him, and activate the rear emergency lights. A reasonable person in Critchfield's position would have inferred he was being stopped on the side of the road for questioning. Accordingly, Hartley made the requisite show of authority when he directed Critchfield to the side of the road for the purpose of restraining his movement.

    Significantly, Critchfield submitted to what he understood was a show of authority. Prior to the officers' approach, he had been walking in the road. But after Hartley directed him to do so, Critchfield changed direction and moved to the side of the road. His compliance with Hartley's instruction is the requisite passive acquiescence required to convert the encounter into a seizure.

    Thus, based on the totality of the circumstances, an innocent person in Critchfield's position would not have believed he was free to leave or to ignore Hartley's directive to move over.[2] The Court therefore **OVERRULES** the Government's objection.

---

[2] At the hearing on the motion to suppress, Lemley testified that, at the time Hartley directed Critchfield to move to the side of the road, the officers intended to conduct an investigatory

Case 1:20-cr-00040-IMK-MJA   Document 41   Filed 04/28/21   Page 12 of 17   PageID #: 315

USA v. CRITCHFIELD                                                1:20CR40

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

### B. Hartley and Lemley had a reasonable suspicion to detain Critchfield based on information they received from Gerhart.

Critchfield objects to Magistrate Judge Aloi's conclusion that Hartley and Lemley had a reasonable suspicion to seize him without a warrant. "If a person acquiesces to an officer's show of authority thereby giving rise to a seizure, then we must consider whether the officer had a reasonable articulable suspicion of criminal activity to justify the seizure." Cloud, at *5. "The degree to which the police may rely on a tip to establish reasonable suspicion depends on the tipster's veracity, reliability, and basis of knowledge." United States v. Kehoe, 893 F.3d 232, 238 (4th Cir. 2018) (citing Alabama v. White, 496 U.S. 325, 328, (1990)).

At the time Hartley and Lemley approached Critchfield on Airport Road, neither had personally observed Critchfield or his

---

stop and that Critchfield would not be free to leave until they determined who he was and why he was in Gerhart's neighborhood. The Government asserts that Magistrate Judge Aloi's determination of when Critchfield's seizure occurred is erroneously based on Lemley's subjective intent. Lemley's subjective intent is "irrelevant except insofar as that may have been conveyed to [Critchfield]." Mendenhall, 446 U.S. at 544 n.6. Because there is no indication that either officer conveyed his intent to conduct an investigatory stop to Critchfield, Lemley's subjective intent is irrelevant. Nevertheless, even without considering Lemley's understanding of the officers' purpose in directing Critchfield to the side of the road, the Court finds that a reasonable person would not have felt free to leave at that time.

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

behavior; their information regarding Critchfield's appearance and behavior had come from Gerhart. Nevertheless, there is no evidence to indicate Hartley and Lemley were not entitled to rely on Gerhart's observations. Gerhart testified that, around 8:00 or 8:30 A.M. on January 25, 2016, he observed Critchfield exit an alleyway near an empty house in his neighborhood. When the men made eye contact, Critchfield seemed to be taken aback and shot Gerhart a furtive glance. Gerhart believed that Critchfield looked out of place, especially at that time of day.

Gerhart therefore followed Critchfield through the neighborhood, and watched as he responded by changing his route. Gerhart also observed Critchfield's appearance. In particular, he noticed that something very heavy weighed down the front pocket of Critchfield's sweatshirt. Relying on his law enforcement experience and his familiarity with the area, Gerhart concluded that Critchfield was a suspicious person and relayed this information to Hartley. Gerhart also testified that he considered the weighed down appearance of Critchfield's sweatshirt pocket to be particularly suspicious, and that he informed Hartley of the apparent weight in the pocket. Although Gerhart did not convey to Hartley the specific reason for his suspicion about the weighed down appearance of Critchfield's sweatshirt pocket, he believed

Case 1:20-cr-00040-IMK-MJA   Document 41   Filed 04/28/21   Page 14 of 17   PageID #: 317

USA v. CRITCHFIELD                                                  1:20CR40

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

Hartley would have independently understood the importance of this information based on his training as a fellow law enforcement officer.

From Hartley's perspective, he received a tip regarding a suspicious person from someone he knew to be a federal law enforcement officer with whom he had had previous professional interactions. He also knew that Gerhart resided in the neighborhood where he initially had observed Critchfield, and accordingly was familiar with the area.

That Hartley and Lemley did not personally witness any suspicious behavior by Critchfield is not dispositive of the issue. They were entitled to rely on the information conveyed to them by Gerhart. Critchfield, however, contends that, in determining Hartley and Lemley had a reasonable suspicion to detain him based on the information conveyed to them by Gerhart, Magistrate Judge Aloi erroneously applied the collective-knowledge doctrine. This argument is without merit.

The collective-knowledge doctrine "holds that when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action [him]self." United States v. Massenburg, 654 F.3d 480, 492 (4th Cir. 2011). This doctrine "simply directs us to

Case 1:20-cr-00040-IMK-MJA Document 41 Filed 04/28/21 Page 15 of 17 PageID #: 318

USA v. CRITCHFIELD                                                  1:20CR40

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

substitute the knowledge of the instructing officer or officers for the knowledge of the acting officer; it does not permit us to aggregate bits and pieces of information from among myriad officers, nor does it apply outside the context of communicated alerts or instructions." Id. at 493. Conversely, reliance on vertical collective knowledge is permissible and arises when one officer conveys his or her conclusions to other officers who accomplish the seizure. Id. at 493-94 (citing United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1228 n. 5 (10th Cir. 2008).

Critchfield is correct that information may not be aggregated from various sources to find a reasonable suspicion justifying his detention, but no aggregation of information was necessary here. A reasonable suspicion for Critchfield's detention existed based on Gerhart's personal observations of Critchfield's behavior, appearance, and location, which he conveyed to Hartley and Lemley. Gerhart did not act as an instructing officer or direct Hartley or Lemley to arrest Critchfield; rather, he relied on his law enforcement experience to collect information regarding Critchfield's suspicious behavior, which he then reported to the officers. And, in responding to a report of a suspicious person, Hartley and Lemley relied on the personal knowledge of an informant whom they knew to be credible.

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36], OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37], OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

As Magistrate Judge Aloi found, at the time of the seizure, law enforcement officers in Hartley and Lemley's position would have had a reasonable suspicion that criminal activity was afoot based on a federal law enforcement officer's report that he had observed Critchfield:

- Exiting an alley at an unusual time of day, approximately 8:00 or 8:30AM,
- Walking in a neighborhood away from a vacant home,
- Looking as if he had been caught doing something wrong,
- Changing his route after being seen, and
- Wearing a hooded sweatshirt with a weighed-down front pocket.

Magistrate Judge Aloi acknowledged the difficultly of the factual questions involved here. It was not illegal for Critchfield to walk through a residential neighborhood in the morning hours. Nor is there any indication the neighborhood is a high crime area. However, Gerhart's law enforcement experience, in combination with the number of variables he identified as contributing to Critchfield's suspiciousness, which he conveyed to the responding officers, gave rise to a reasonable, articulable suspicion justifying Critchfield's seizure by Hartley and Lemley.

The Court therefore **OVERRULES** Critchfield's objection and concludes that, because Officers Hartley and Lemley had a reasonable suspicion to detain Critchfield, their discovery of a firearm and physical evidence was not unlawful. The exclusionary

Case 1:20-cr-00040-IMK-MJA Document 41 Filed 04/28/21 Page 17 of 17 PageID #: 320

USA v. CRITCHFIELD                                                1:20CR40

**MEMORANDUM OPINION AND ORDER ADOPTING THE R&R [DKT. NO. 36],
OVERRULING THE DEFENDANT'S OBJECTION [DKT. NO. 37],
OVERRULING THE GOVERNMENT'S OBJECTION [DKT. NO. 38], AND
DENYING THE DEFENDANT'S MOTION TO SUPPRESS [DKT. NO. 20]**

rule therefore does not apply and the evidence should not be suppressed.

### V.  CONCLUSION

For the reasons discussed, the Court:

(1) **ADOPTS** the R&R (Dkt. No. 36);

(2) **OVERRULES** Critchfield's objection to the R&R (Dkt. No. 37);

(3) **OVERRULES** the Government's objection to the R&R (Dkt. No. 38); and

(4) **DENIES** Critchfield's motion to suppress (Dkt. No. 20).

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: April 28, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE